UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | : | CRIMINAL CASE NO. |
| v. | : | 3:15-CR-00120 (VAB) |
| | : | |
| WILSON VASQUEZ, ET AL | : | |

**RULING ON MOTION TO WITHDRAW GUILTY PLEA**

On January 10, 2017, Defendant Samuel Albarran filed a motion to withdraw his plea of guilty, which he entered before U.S. Magistrate Judge Garfinkel on September 15, 2016. Mot. to Withdraw Plea, ECF No. 643. For the reasons stated below, Mr. Albarran's [643] motion is **DENIED**.

I.   **Procedural Background**

On July 9, 2015, Defendant Samuel Albarran was indicted on charges of participation in a heroin trafficking conspiracy. Indictment, ECF No. 1. In Count One of the Indictment, Mr. Albarran was charged with conspiracy to distribute and to possess with intent to distribute between 100 grams and 1 kilogram of heroin under 21 U.S.C. § 841(b)(1)(B)(i), which carries a statutory minimum sentence of 5 years' imprisonment and a maximum sentence of 40 years' imprisonment. *Id.*

On July 8, 2016, Mr. Albarran was named in a superseding indictment charging him with three additional counts. Superseding Indictment, ECF No. 337. In Count Seven of the superseding indictment, Mr. Albarran was charged with unlawful possession of a firearm by a convicted felon under 18 U.S.C. §§ 922(g) and 924(a)(2), which carries a maximum term of imprisonment of 10 years. *Id.* In Count Eight of the superseding indictment, Mr. Albarran was separately charged with possession of a firearm in furtherance of a drug trafficking crime under

1

18 U.S.C. §§ 924(c)(1)(A)(i) and 924(c)(2), which carries a mandatory minimum sentence of 5 years' imprisonment, which is required to run consecutively to the underlying drug trafficking offense. *Id.* In Count Six of the superseding indictment, Mr. Albarran was also charged with possession with intent to distribute heroin and cocaine under 21 U.S.C. §§ 841(a)(1) and 841(b)(l)(C) and 18 U.S.C. § 2.

Mr. Albarran initially entered a plea of not guilty on all counts, and he was scheduled for a jury trial on September 20, 2016. Notice, ECF No. 374. The Court held a final pre-trial conference on September 14, 2016. Minute Entry, ECF No. 470. That same day, Mr. Albarran appeared before Magistrate Judge Garfinkel, with counsel, to participate in a hearing under *Missouri v. Frye,* 132 S.Ct. 1399 (2012), to evaluate the government's offer of disposition as well as potential penalties if convicted at trial. Minute Entry, ECF No. 642. The very next day, on September 15, 2016, five calendar days before the scheduled jury trial, Mr. Albarran again appeared before Magistrate Judge Garfinkel and pled guilty to two counts of the superseding indictment. Minute Entry, ECF No. 501.

During the change of plea hearing, Mr. Albarran specifically acknowledged his guilt with respect to the offense conduct. The hearing transcript reflects the following exchange:

> THE COURT: Could you ask a few follow-up questions just to make sure, yet one more time, that we covered each of those essential elements?
> MR. DONOVAN: Okay. So, the allegations of the government were essentially that your brother was running a drug operation and that constituted a conspiracy, and was a conspiracy to possess with intent to distribute heroin. And at some point in some, I say, a minimal way, but in a way anyway, you actually became involved in that; is that fair to say?
> THE DEFENDANT: Yes.
> MR. DONOVAN: And then in addition to that, they claim that you had constructive possession over a firearm, and that that firearm was used in furtherance of the drug conspiracy? This, of course, has to do with the two firearms that were seized at 501 Blatchley, you understand that, right?
> THE DEFENDANT: Yes.
> MR. DONOVAN: And you weren't living at 501 Blatchley?

>THE DEFENDANT: No, I wasn't.
>MR. DONOVAN: But nevertheless you did have -- your mom lived upstairs there?
>THE DEFENDANT: Yes, she did.
>MR. DONOVAN: And another brother was actually renting that apartment, right?
>THE DEFENDANT: Yes.
>THE COURT: So you did have the ability to exercise dominion and control over things that were in that apartment, right? You have the power do that if you wanted to?
>THE DEFENDANT: Yes.

Hr'g Tr. at 40-42, ECF No. 551.

As part of Mr. Albarran's plea agreement, the government agreed to dismiss two of the counts against him, significantly reducing the potential mandatory minimum sentence in his case. Plea Agreement, ECF No. 503. On September 20, 2016, the morning of jury selection in this case, the two remaining defendants pled guilty, right before the commencement of jury selection. After that date, on September 23, 2016, a group named R&R Investigations, LLC issued an investigative report in connection with Mr. Albarran's case. Investigative Rep., Def. Ex. 4, ECF No. 643-4. Mr. Albarran had requested this investigation on his own, without acting through his counsel at the time. Def. Mem. in Supp. at 2, ECF No. 643-1. The investigative report simply provided additional support for Mr. Albarran's contention that he did not reside at 501 Blatchley Ave. Def. Ex. 4.

On October 27, 2016, Mr. Albarran's appointed counsel at the time, Jeremiah Donovan, filed several *pro se* motions on Mr. Albarran's behalf, including a motion to proceed *pro se*. Def. Mots., ECF No. 538. On November 2, 2016, the Court held a hearing on those motions, and at that hearing, the Court appointed Alexander Schwartz to serve as new counsel for Mr. Albarran. Minute Entry, ECF No. 553. Mr. Albarran did not request to withdraw his guilty plea at that time. *Id.*

On December 5, 2016, one month after the hearing, a new attorney, Scott Gleason, filed a motion for admission *pro hac vice* to represent Mr. Albarran in this case. Gleason Mot., ECF No. 591. On January 10, 2017, two months after the hearing and four months after Mr. Albarran's guilty plea, Mr. Gleason filed a motion on Mr. Albarran's behalf of to withdraw his guilty plea. Def. Mot., ECF No. 643. On January 18, 2017, Mr. Schwartz filed a motion to withdraw as Mr. Albarran's appointed counsel in light of Mr. Gleason's appearance, and the Court granted Mr. Schwartz's motion on January 20, 2017. Schwartz Mot. to Withdraw, ECF No. 655; Minute Entry, ECF No. 668.

## II.     Standard of Review

Under Rule 11 of the Federal Rules of Criminal Procedure, a criminal defendant may withdraw a plea of guilty "after the court accepts the plea, but before it imposes sentence if … the defendant can show a fair and just reason for requesting the withdrawal." Fed. R. Crim. P. 11(d)(2)(B). "[A] defendant who seeks to withdraw his plea 'bears the burden of satisfying the trial judge that there are valid grounds for withdrawal, taking into account any prejudice to the government.'" *United States v. Gonzalez*, 970 F.2d 1095, 1100 (2d Cir. 1992) (quoting *United States v. Quinones*, 906 F.2d 924, 928 (2d Cir. 1990)).

"A defendant has no automatic entitlement to have such a motion granted, for society has a strong interest in the finality of guilty pleas, and allowing withdrawal of pleas not only undermines confidence in the integrity of our judicial procedures, but also increases the volume of judicial work, and delays and impairs the orderly administration of justice." *United States v. Maher*, 108 F.3d 1513, 1529 (2d Cir. 1997) (internal citations and marks omitted). Accordingly, "[t]he fact that a defendant has a change of heart prompted by his reevaluation of either the

Government's case against him or the penalty that might be imposed is not a sufficient reason to permit withdrawal of a plea." *Gonzalez*, 970 F.2d at 1100.

### III.   Discussion

When determining whether the defendant has shown a "fair and just reason" to justify withdrawal under Rule 11, the Court considers the following factors: "(1) whether the defendant has asserted his or her legal innocence in the motion to withdraw the guilty plea; (2) the amount of time that has elapsed between the plea and the motion (the longer the elapsed time, the less likely withdrawal would be fair and just); and (3) whether the government would be prejudiced by a withdrawal of the plea." *United States v. Schmidt*, 373 F.3d 100, 102–03 (2d Cir. 2004) (internal citations omitted).

In addition to the three factors outlined above, "[c]ourts may also look to whether the defendant has 'raise[d] a significant question about the voluntariness of the original plea.'" *Schmidt*, 373 F.3d at 103 (quoting *United States v. Torres,* 129 F.3d 710, 715 (2d Cir. 1997)). "'Ineffective assistance of counsel during plea negotiations can invalidate a guilty plea and make granting withdrawal appropriate, to the extent that the counsel's deficient performance undermines the voluntary and intelligent nature of defendant's decision to plead guilty.'" *United States v. Doe*, 537 F.3d 204, 213 (2d Cir. 2008) (quoting *United States v. Arteca*, 411 F.3d 315, 320 (2d Cir. 2005)).

In light of the three *Schmidt* factors, and considering the facts and circumstances of this case and the arguments raised by the parties, Mr. Albarran has not met his burden to withdraw his plea of guilty in this case.  Accordingly Mr. Albarran's motion to withdraw his guilty plea is denied.

### A. Legal Innocence

First, the Court considers whether Mr. Albarran has asserted his legal innocence. *Id.* In his motion to withdraw his guilty plea, Mr. Albarran appears to claim that he is legally innocent. Def. Mem. in Supp. at 12-13 ("the defendant has always asserted his innocence."). However, the transcript from his guilty plea indicates otherwise. During that proceeding, while under oath, Mr. Albarran clearly and unequivocally agreed to each element of the charges to which he pled guilty. Hr'g Tr. at 24-42. "[S]tatements at a plea allocution carry a strong presumption of veracity," and the Court may rely on those statements when determining whether to permit a defendant to withdraw an otherwise valid guilty plea. *Doe*, 537 F.3d at 213 (finding that "the district court did not abuse its discretion in declining to hold an evidentiary hearing on the defendant's motion.").

Mr. Albarran insists that, due to an investigation he arranged on his own initiative and the resulting investigative report that was provided in late September, 2016, he now has evidence that he did not reside at 501 Blatchley Ave., New Haven. Def. Mem. in Supp. at 10-11. However, this fact is irrelevant to his legal innocence, as this had already been established at the time of Mr. Albarran's guilty plea. Hr'g Tr. at 41 ("MR. DONOVAN: And you weren't living at 501 Blatchley? THE DEFENDANT: No, I wasn't."). Furthermore, there is ample evidence connecting Mr. Albarran to 501 Blatchley Avenue apart from any issues regarding Mr. Albarran's residence – it is undisputed that Mr. Albarran's mother lived on the second floor of that building at the time of the suspected offense conduct, and it also undisputed that, during the government's investigation, the government found a credit card bill in Samuel Albarran's name at 501 Blatchley Avenue. *Id.*; Report, Gov't Ex. 2, ECF No. 672-2.

Mr. Albarran describes the September investigative report as "powerful exculpatory evidence," *see* Def. Mem. in Supp. at 9; however, there is nothing exculpatory in that report. Mr. Albarran seeks to compare this report to the exculpatory evidence in *United States v. Alazzam*, No. CRIM. 3:08-CR-127 (SR), 2009 WL 1941833 (D. Conn. July 6, 2009), a case in which the Court permitted a criminal defendant to withdraw his guilty plea based in part on the defendant's "realistic probability that, but for the withheld information, he would have gone to trial." *Id.* (citing *United States v. Persico*, 164 F.3d 796, 804 – 805 (2d Cir. 1999)). Mr. Albarran has demonstrated no such "realistic probability" here. *See id.* The investigative report in this case raises questions about whether Mr. Albarran resided at 501 Blatchley Ave., but Mr. Albarran's residence does not address the issues of dominion and control over that location conceded to by Mr. Albarran during his plea. Thus, the report is not exculpatory and Mr. Albarran's reliance on *Alazzam* is misplaced.

Mr. Albarran has not identified any basis in law or fact for a recognizable claim of legal innocence in this case.[1] The transcript from the change of plea proceeding indicates that Mr. Albarran unequivocally admitted to his guilt at that proceeding under penalty of perjury, and Mr. Albarran's current motion does not include any new information or allegations that would give rise to a recognizable claim of legal innocence at this time. Thus, Mr. Albarran has not met his burden with respect to the first factor under *Schmidt*.

---

[1] In addition to Mr. Albarran's assertion that he did not reside at 501 Blatchley Ave., Mr. Albarran also attempts to argue his legal innocence based on what he calls the "single transaction" principle. According to Mr. Albarran, this principle provides that he cannot be guilty of participation in a criminal conspiracy based solely on his involvement in one transaction. This is not a recognized principle in connection with criminal conspiracies, *see United States v. Medina*, 944 F.2d 60, 64-65 (2d Cir. 1991) (denying drug conspiracy defendants' requested instruction "that a mere 'buyer-seller' relationship in a single transaction does not alone support a conspiracy conviction"), and Mr. Albarran does not cite any controlling authority establishing that such a principle exists. Thus, the Court does not give any weight to this argument in connection with Mr. Albarran's motion to withdraw his guilty plea.

### B. Timing

Second, the Court considers "the amount of time that has elapsed between the plea and the motion." *Schmidt*, 373 F.3d at 102. Mr. Albarran entered his guilty plea on September 15, 2016. His motion to withdraw the guilty plea was filed on January 10, 2017, nearly four months after his guilty plea was entered. While Mr. Albarran did make some communications with the Court on his own after his change of plea hearing, apart from his appointed counsel, he did not make any formal effort to withdraw his guilty plea before January 10, 2017, even though he had a hearing on November 02, 2016 during which he successfully requested new appointed counsel. *See* Minute Entry, ECF No. 553.

This significant delay in formally challenging the entry of a guilty plea weighs against withdrawal of Mr. Albarran's plea. *See Doe,* 537 F.3d at 213 (denying motion to withdraw guilty plea, noting that "the fact that the defendant waited five months to file his motion strongly supports the district court's finding that his plea was entered voluntarily"). Thus, Mr. Albarran has not met his burden with respect to the second factor under *Schmidt.*

### C. Prejudice

Third, the Court considers whether the government would be prejudiced by a withdrawal of Mr. Albarran's plea at this time. *Schmidt*, 373 F.3d at 103. The potential prejudice to the government in this case is clear. Mr. Albarran did not enter his guilty plea until five calendar days before the start of trial, after the government had expended significant time and resources to prepare its case. Now, every co-defendant in this case has pled guilty, and, as the government notes in its response to Mr. Albarran's motion, several key witnesses have since moved and may no longer be available. *See* Gov't Br. at 14, ECF No. 672. During oral argument, the government further explained that, were Mr. Albarran's case to proceed to trial at this time,

8

several forensic analyses, such as the DNA analysis on the firearm attributed to Mr. Albarran, would need to be performed again.

The government thus would be significantly prejudiced if Mr. Albarran were to withdraw his plea of guilty and if his case were to proceed to trial, as the government would have to recreate much of the work it had already done to prepare for trial in September 2016. Accordingly, Mr. Albarran fails to meet his burden with respect to this third and final *Schmidt* factor.

### D.  Additional Factors: Voluntariness & Ineffective Assistance of Counsel

In addition to the three factors outlined in *United States v. Schmidt,* district courts may also consider whether the defendant was coerced into entering a guilty plea.  *See Torres*, 129 F.3d at 715 ("To get permission to withdraw a guilty plea, a defendant must raise a significant question about the voluntariness of the original plea.").  Mr. Albarran has not demonstrated any plausible concerns regarding the voluntariness of his guilty plea.  On the issue of voluntariness, the Court has reviewed the transcript of the plea proceedings held before Judge Garfinkel, and Mr. Albarran expressly indicated that his plea was a voluntary one, Hr'g Tr. at 4, and none of Mr. Albarran's comments in the transcript suggest anything different.[2]

---

[2] In fact, the transcript from the change of plea proceeding demonstrates that Mr. Albarran very clearly understood the nature of his plea.  During the plea proceeding, Mr. Donovan took time to clearly explain the notion of constructive possession to Mr. Albarran, outlining in simple terms the legal basis for Mr. Albarran's guilt in this matter:

> MR. DONOVAN: [The statute] says if you possess [the gun] in furtherance of a drug conspiracy then that's enough… there's constructive possession.  And I've explained that… if you have the intention and the ability to exercise dominion and control over something, even though it's not on you, not in your car, it's not within 100 yards of where you are, nevertheless you possess it. There's a TV at my house right now that, you know, I'm 45 miles away from, but I do possess it because I have the intent and the ability to exercise dominion and control over it. We've talked about that.
> THE DEFENDANT: Yes.
> THE COURT: That's actually a very good illustration… But Mr. Albarran, I know that you listened closely to everything Mr. Hall said yesterday and everything Mr. Caruso just said.  And he didn't go over all the evidence in the case, but as far as what he said today, did he get it right?
> THE DEFENDANT: Yes, your Honor.

Hr'g Tr. at 39-40.

"A defendant's bald statements that simply contradict what he said at his plea allocution are not sufficient grounds to withdraw the guilty plea." *Torres*, 129 F.3d at 715. Thus, withdrawal of Mr. Albarran's guilty plea is not warranted on this ground.

Finally, the Court concludes that Mr. Albarran has not raised any valid concerns with respect to the performance of his counsel. Throughout Mr. Albarran's filing and during his new counsel's oral argument, there are repeated references to the alleged ineffectiveness of his prior appointed counsel, Jeremiah Donovan. However, there is no evidence that Mr. Donovan was ineffective in any way at the time of Mr. Albarran's guilty plea, nor has Mr. Albarran identified any material deficiencies in Mr. Donovan's investigation of Mr. Albarran's case leading up to his guilty plea. To the contrary, the record shows that Mr. Donovan advocated robustly on Mr. Albarran's behalf – Mr. Donovan filed numerous pre-trial motions in Mr. Albarran's case, including two motions to suppress, one of which presented to the Court some of the same concerns Mr. Albarran now raises regarding his lack of residence at 501 Blatchley Ave. Mot. to Supp., ECF No. 376; Mot. to Supp., ECF No. 393.

The record also shows that the Government offered Mr. Albarran a significant reduction in the potential sentence by not only offering a three-point reduction in offense level for acceptance of responsibility, but also dismissing Counts 6 and 7 of the superseding indictment and allowing him to plead to a lesser included offense of Count 1 of the superseding indictment. Hr'g Tr. at 26-27; Plea Agreement, ECF No. 503. This plea offer allowed Mr. Albarran to reduce significantly the scope of his criminal exposure, providing for a potential sentence of as low as a minimum of five years when he could have faced a minimum of ten. On this record, there is no basis to suggest that Mr. Donovan provided ineffective assistance by advising him to

accept the government's offer in light of the facts of this case.  Indeed, Mr. Donovan very effectively advocated on Mr. Albarran's behalf.

Mr. Albarran's argument regarding the ineffective assistance of counsel has no merit, and the withdrawal of Mr. Albarran's guilty plea is not warranted on this ground.  *See Doe*, 537 F.3d at 210 (withdrawal of guilty plea not appropriate where, "given the overwhelming proof of the defendant's guilt … and the likelihood of a life sentence if convicted at trial, [defendant's] decision to plead guilty was 'clearly in his interests.'").

Mr. Albarran's filings suggest that, several months after voluntarily accepting the government's offer, Mr. Albarran changed his mind.  These circumstances, without substantially more, do not constitute a "sufficient reason to permit withdrawal of a plea." *Gonzalez*, 970 F.2d at 1100.  Thus, Mr. Albarran's motion to withdraw is properly denied.

### IV.     Conclusion

Mr. Albarran's [643] Motion to Withdraw Guilty Plea is **DENIED**.  This case will proceed to sentencing on the scheduled date.

SO ORDERED in Bridgeport, Connecticut this 7th day of March, 2017.

/s/ Victor A. Bolden
VICTOR A. BOLDEN
UNITED STATES DISTRICT JUDGE